## EVANS v. BURNS ET AL.

1. **Evidence:** PAROL TO EXPLAIN OR VARY WRITING: RULE STATED AND APPLIED. Where parties have entered into a written contract, but the words do not express their whole contract, but are nevertheless of such character that the law, by implication, superadds something, the implication may be rebutted or controlled by parol evidence. But when nothing is left to implication there is no room for parol evidence. And so, where a judgment, which was a lien on land, was assigned in writing to a purchaser of a portion of the land, and it was necessary to the protection of such person that the judgment should be kept alive, *held* that it was incompetent to show by parol that the real understanding of the parties was that there was nothing to assign, but that the transaction was the payment and not a purchase of the judgment, and that the contract of assignment was a void act.

BECK, CH. J., not concurring.

*Appeal from Chickasaw Circuit Court.*

WEDNESDAY, OCTOBER 21.

THE plaintiff claims to be the owner of a judgment rendered upon a promissory note against the defendant Burns. The note at the time of its execution was secured by a mortgage upon about six acres of land. In the action in which the judgment was rendered there was no prayer for a decree of foreclosure, and this action is brought as supplemental to that to enforce the lien of the mortgage. The defendant Dayton is the owner of two notes executed by Burns and secured by the same mortgage, but falling due later than the note upon which the plaintiff's judgment was rendered. The court rendered a decree of foreclosure in favor of the plaintiff, and decreed that his lien is paramount to that of Dayton. Dayton appeals.

*A. C. Boylan*, for appellants.

*J. R. Bane*, for appellee.

ADAMS, J.—The appellant Dayton denies that the plaintiff is entitled to any lien at all. He concedes that Burns executed three notes, that they were all secured by one mortgage, and that the plaintiff's judgment was rendered upon the one first falling due; but he contends that the judgment was afterwards paid. Whether it was paid or not is the principal question to be determined. The undisputed facts are that the Bank of New Hampton became the owner of the three notes; that when the first fell due it obtained thereon the judgment in question, and afterwards assigned the judgment, and also the two notes not in judgment, to the defendant Dayton. Those two notes Dayton still owns; but the judgment he assigned to one Elizabeth Cronough, and she assigned it to the plaintiff. Dayton, however, contends that, while in form the transaction between him and Mrs. Cronough might appear as above stated, the payment to him by Mrs. Cronough was understood to work an actual discharge of the judgment, and he testified substantially to that effect.

The fact is, Mrs. Cronough bought about three acres of the land of Burns, the mortgagor, and took a deed of warranty, with a covenant againt one-half of the mortgage, and only half. Under this state of things she had no way of protecting her title except by paying one-half of the mortgage, but it does not appear that she promised her grantor, Burns, that she would do so, and it was her right to abandon the land which she purchased and allow it to be sold under a foreclosure of the mortgage, if she preferred to do so. We have no doubt that she contemplated protecting her title by an eventual payment and discharge of the judgment, but that at the time of her transaction with Dayton she or her attorney saw that, if the judgment should be discharged, her land would still be liable for the balance of the mortgage debt. As the

judgment was the prior one of two liens, she naturally insisted that Dayton, instead of discharging the judgment, should assign it to her. Under the circumstances, this was the only way in which she could protect herself. Dayton certainly consented to this arrangement, and, having obtained her money under it, we do not think that he is entitled to dispute its legal effect. He never had any claim upon Mrs. Cronough in any form. In paying her money to him her act was purely voluntary. It was her right, therefore, to dictate the form of the transaction, and it was his right, if he did not choose to assent to it, to enforce his claim as the law allowed. It often happens that a person is willing to advance the amount of a judgment if he can have an assignment of it, but would advance nothing by way of payment and discharge of the judgment. If we should hold that by parol evidence a meaning can be put upon an assignment which is in contravention of its terms, there would be no safety in such transaction. The case is not different from what it would have been if Dayton had expressly stipulated in writing that Mrs. Cronough was to hold, own and control the judgment.

The appellant relies upon *Cousins v. Westcott*, 15 Iowa, 255; and *Harrison v. McKim*, 18 Id., 491. But in neither of those cases was it held admissible to show that the assignment had no operation. Force was given to the parties' contract, and no express words were contradicted. The most that can be said is that this court, in obedience to what is deemed the weight of authority, has gone so far as to hold that where parties have entered into a written contract, but the words do not express their whole contract, but are nevertheless of such character that the law, by implication, superadds something, the implication may be rebutted or controlled by parol evidence. In the case at bar there was nothing left for implication. The words used in the written assignment were a complete expression of the contract. The object of the parol evidence is to show that the real understanding of the parties

was that there was nothing to assign, and that the making of the contract of assignment was a void act. We think. that there is nothing in the cases cited which would justify the ruling for which the appellant contends. He relies in part upon what was done by Mrs. Cronough subsequently to the assignment, but we can see in it no intent to discharge the judgment, the lien of which was so manifestly necessary for her protection.

The evidence shows that Dayton paid $42.95 as taxes on the premises. He asks that he may have a decree for the amount paid, and interest, and that the same be made the first lien upon the premises. The court held the lien to be inferior to the plaintiff's lien. In this we think that the court erred. The taxes before payment were certainly the first lien upon the premises, and we see no reason why a junior incumbrancer, in paying them for his protection, should not be entitled to such lien.

We think the decree correct except in regard to the lien for taxes.

MODIFIED AND AFFIRMED.

BECK, CH. J., not concurring.