First National Bank of Hawkeye, Appellee, v. L. G. Raatz et al., Appellants.

No. 39517.

June 24, 1929.

Rehearing Denied October 15, 1929.

*Sager & Sweet* and *W. H. Antes*, for appellants.

*E. H. Estey*, for appellee.

Albert, C. J.—The petition is in the usual form, to recover on a certificate of deposit dated July 20, 1926, for $5,000, issued by the First State Bank of Hawkeye to Leo G. Raatz. Said certificate was a time certificate for twelve months, drawing 4 per cent interest. The allegations of the petition are that, prior to the maturity date, L. G. Raatz, for a valuable consideration, signed, transferred, and delivered said certificate to the plaintiff; also, that, for a valuable consideration, both defendants made a written indorsement on the back thereof, as follows,—"Leo G. Raatz, Wm. Raatz;" that plaintiff is now the owner and holder of the same, no part of which has been paid, and judgment is prayed accordingly.

Defendants answer in two counts. They admit that said

certificate was issued to Leo G. Raatz, as alleged, and that the plaintiff is a corporation organized under the laws of the United States, engaged in the banking business at Hawkeye, Iowa, but deny all other allegations. For a second count, they allege, in substance, that one N. L. Watt was the owner of a certain 80 acres of land in Fayette County, subject to a first mortgage of $8,000; that the plaintiff, the First National Bank of Hawkeye, and the Randalia Savings Bank held certain promissory notes against Watt; that, on November 22, 1926, Leo G., Louis G., and William Raatz purchased said real estate from Watt, and paid for the same with five certificates of deposit, among which was the certificate now in suit; and that Watt and wife gave a warranty deed to Louis G. Raatz for the 80-acre tract of land. At the time said certificates were turned over to Watt, the cashier of the plaintiff bank and the cashier of the Randalia Savings Bank were present, and agreed that said certificates of deposit were received and accepted in lieu of cash, as full payment of the purchase price of said real estate. It was also agreed between all of said parties, including the plaintiff, ''that the indorsements on the back of said certificates of deposit would not make the defendants liable thereon, and that said indorsements were without recourse, and simply for the convenience of the transaction;'' that the defendants offered to get the cash on this certificate from the First State Bank of Hawkeye, but all parties agreed that they would accept the certificates of deposit in lieu of cash. The transaction was fully and completely performed and carried out upon the delivery of the aforesaid certificates of deposit in the manner aforesaid, and the indorsement of the defendants on the certificate sued upon was without recourse, and of no legal or binding force upon them.

Under the issues thus joined, the case went to trial. It is admitted that due and timely demand for payment of this certificate was made, payment was refused, and legal notice given the defendants of such demand and nonpayment. It was also stipulated that the name of Leo G. Raatz, appearing on the back of said certificate of deposit, was signed by William Raatz by authority and with the permission of the defendant Leo G. Raatz. Over objection, the defendants were permitted to offer the testimony of Leo G. Raatz and William Raatz, which, in a way, gave the history of the purchase of this 80-acre tract of land from

Watts. The cashier of the plaintiff bank and the cashier of the Randalia Bank seem to have been in charge of the sale of this land to the Raatzes, and the Raatzes testify that they finally agreed to buy this land for $12,000; that among them they had certificates of deposit amounting to something over this amount, among which was the $5,000 certificate sued upon in this action. The Raatzes went to the First State Bank of Hawkeye, which issued this certificate of deposit; and although it was a time certificate, the latter bank agreed to cash the same at any time they wished to invest it in land. Up to this point, the talk between these two cashiers and the Raatzes was purely a cash transaction, and was so understood. When it came to closing the deal, the Raatzes informed these cashiers that the First State Bank of Hawkeye would cash these certificates at once, and the cashiers then said they would accept the same in lieu of cash; and thereupon Bopp, cashier of the First National Bank of Hawkeye, executed to Louis G. Raatz a receipt for these various certificates of deposit, reciting that they were received for the purchase price of the 80 acres. This receipt was signed "The First National Bank of Hawkeye, Iowa, By L. E. Bopp, Cashier."

The record shows that the incumbrances against said property were duly paid and satisfied by the said bank, and releases were filed of record in due time, and the land deal properly closed. At the close of the defendants' testimony, as stated, the court directed a verdict for the plaintiff.

It must be remembered, in the consideration of this case, that this is not an action by the vendor against the vendee in which the vendor is claiming to recover against the vendee on a certificate of deposit by claiming that he did not receive the full purchase price of said land. Much authority is cited to us to the point that the delivery of this certificate of deposit was not payment, because such delivery is always considered conditional; but we have not this question before us. Stripped of the underbrush, this suit by the plaintiff is on the indorsement of the defendants to this negotiable instrument. The defense made, in substance, is: (1) That it was agreed by all parties, including the plaintiff, that the indorsements on the back of said certificates of deposit would not make the defendants liable thereon; and (2) that said indorsements were without recourse, and sim-

ply for the convenience of the transaction, and of no legal or binding force upon them.

If it be assumed, for the moment, that defendants, over proper objections, have sustained each of these defenses by the evidence, the question is: Are such defenses permissible, under the law and the pleadings in this case? In other words, is parol evidence admissible to change or vary the liability of a blank indorser? At one time in this state it was held that such evidence was admissible, under certain circumstances. This line of authority is collated in *Berry v. Gross,* 192 Iowa 300, l.c. 303; but we there held, following the rule laid down in *Porter v. Moles,* 151 Iowa 279, that, since the adoption of the Uniform Negotiable Instrument Law, such was no longer the rule in Iowa, and under that act such evidence was not admissible. We later followed this doctrine in *Moore v. Altmyer,* 199 Iowa 368; and the latest pronouncement thereon seems to be in *Kent State Sav. Bank v. Campbell,* 208 Iowa 341, where this question is put at rest, settling finally that parol evidence is not admissible under such circumstances.

In the instant case, the court, while permitting the introduction of said testimony, when the motion to direct a verdict was made on substantially these grounds, evidently changed his mind, and held that such testimony was not to be considered; and we think this action in this conclusion was right. When such testimony is stricken from the record, there is nothing left to support the defenses made in this action, and the court was right in directing a verdict for the plaintiff.

It might further be said, in passing, that, had the matters set out by the defendants in their answer been legitimate defenses to the action, there still should have been a directed verdict against them, because of the lack of evidence to support the defenses therein set out.—*Affirmed.*

STEVENS, FAVILLE, DE GRAFF, and MORLING, JJ., concur.